UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
                                                                  :

PAMELA MAHONEY;                               :
MICHAEL MAHONEY;                            :
LISA SOLOMON; and                               :
MITCH SOLOMON,                                 :    Case No. 2:22-cv-1305

      Plaintiffs,                                   :

      -vs-                                       :    **COMPLAINT FOR DECLARATORY**
                                                 :    **AND INJUNCTIVE RELIEF**
U.S. DEPARTMENT OF THE                :
INTERIOR; BUREAU OF OCEAN        :
ENERGY MANAGEMENT; U.S.          :
DEPARTMENT OF THE ARMY; and     :
U.S. ARMY CORPS OF ENGINEERS,   :

      Defendants.                                 :
                                                     :
-------------------------------------------------------- x

      Plaintiffs allege as follows:

## INTRODUCTION

    1.     Plaintiffs are long-time residents of East Hampton, New York who seek to enjoy their homes without jeopardizing the health of themselves and their families. They support the renewable energy that will be generated by the South Fork Wind Farm project ("South Fork project") off the eastern shore of Long Island. But as now configured, the onshore portion of that project — which will connect the generated electricity to the local power grid through a high-voltage cable — will cause serious environmental problems. In particular, the trenching required to install the cable under the roads of East Hampton will disturb and spread known contamination of the groundwater by so-called per- and polyfluoroalkyl substances ("PFAS"), which are health-endangering compounds in the eyes of federal and state authorities. That contamination will likely threaten public and private water wells, including those owned by Plaintiffs.

2. Defendants are federal agencies that were required by law to give thoughtful and serious consideration to known environmental concerns before granting their approvals and permits for the South Fork project. Yet as described below, Defendants abdicated their legal responsibility by failing to evaluate the risk of PFAS contamination in anything but the most perfunctory manner. In so failing, Defendants took final agency action that was arbitrary, capricious, and contrary to law. This Court has the authority and duty to set aside the unlawful approvals in relevant part. Moreover, because Plaintiffs will suffer irreparable harm during the pendency of this case, the Court may and should order an immediate halt to further PFAS-spreading construction activities in East Hampton.

## JURISDICTION AND VENUE

3. This Court has original subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action and Plaintiffs' claims arise under federal law, namely, the Administrative Procedure Act ("APA"), 5 U.S.C. § 702; the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332(2)(C); the Clean Water Act, 33 U.S.C. § 1344(b)(1); and the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1337(p)(4)(B).

4. This Court has authority to grant the relief requested herein pursuant to the APA, 5 U.S.C. § 706(2); and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

5. Venue is proper in this Court under 28 U.S.C. § 1391(e)(1)(B) because this is a civil action in which a defendant is an agency of the United States, and (i) a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, or (ii) a substantial part of property that is the subject of the action is situated in this judicial district.

## PARTIES

6. Plaintiffs Pamela and Michael Mahoney, wife and husband, are residents of Wainscott, Town of East Hampton, Suffolk County, New York.

7. Plaintiffs Lisa and Mitch Solomon, wife and husband, are residents of Wainscott, Town of East Hampton, Suffolk County, New York.

8. Defendant U.S. Department of the Interior ("Interior") is an "agency" within the meaning of the APA, 5 U.S.C. § 701(b)(1). Through its Secretary, Interior has the authority and duty to comply with NEPA, 42 U.S.C. § 4332(2)(C), and with OCSLA, 43 U.S.C. § 1337(p)(4)(B).

9. Defendant Bureau of Ocean Energy Management ("BOEM") is a component of Interior and an "agency" within the meaning of the APA, 5 U.S.C. § 701(b)(1). Exercising authority delegated from Interior, BOEM took two of the final agency actions challenged herein.

10. Defendant U.S. Department of the Army ("Army") is an "agency" within the meaning of the APA, 5 U.S.C. § 701(b)(1). Through its Secretary, the Army has the authority and duty to comply with NEPA and the Clean Water Act, 33 U.S.C. § 1344(b)(1).

11. Defendant U.S. Army Corps of Engineers ("Army Corps") is a component of the Army and an "agency" within the meaning of the APA, 5 U.S.C. § 701(b)(1). Exercising authority delegated from the Army, the Army Corps took one of the final agency actions challenged herein.

## GENERAL ALLEGATIONS

**A.     Plaintiffs and their homes in the hamlet of Wainscott**

12. Plaintiffs Pamela and Michael Mahoney own real property on Beach Lane in Wainscott ("Mahoney Property").

13. Wainscott is a hamlet within the Town of East Hampton, New York. Pamela and Michael are both registered to vote in East Hampton.

14. The Mahoney Property has been owned by Pamela Mahoney's family since at least the 1940's. In 2013, Pamela became the owner of the Mahoney Property.

15. Pamela grew up in the cottage located on the Mahoney Property. Now, Pamela and Michael live in the cottage and (since 2020) have lived there most of the time.

16. Pamela's and Michael's three young grandchildren enjoy visiting the cottage and would like to live in it themselves in the future.

17. Pamela and Michael intend to make the cottage a long-term year-round home. As such, the Mahoneys have made significant investments in the cottage, including hiring an architect and a builder to construct a foundation for the cottage.

18. Up until 2018, the Mahoneys had relied on a private well located on their property for drinking water. But in that year, the Mahoneys learned that the water in their well was contaminated with PFAS. Thus, the Mahoneys no longer rely on the well for drinking water, but they do use water from the well for other purposes such as irrigation.

19. PFAS are hazardous substances known to cause a variety of health problems. PFAS do not readily decompose and accordingly persist in the environment for long periods. PFAS can also travel long distances through the flow of groundwater.

20. Plaintiffs Lisa and Mitch Solomon also own real property in Wainscott, located on Wainscott Northwest Road ("Solomon Property"). They are registered to vote in East Hampton.

21. Lisa Solomon is the owner of the Solomon Property, which has been the principal residence for the Solomons for the past six years.

22. The Solomons also have a well on their property. The Solomons likewise do not rely on the well for drinking water, but use water from the well for other purposes such as irrigation.

23. As on the Mahoney Property, PFAS is present on the Solomon Property.

**B.     The South Fork Wind Farm project, its onshore cable, and the adverse environmental impacts to Plaintiffs and the Wainscott community**

24. The South Fork project involves constructing an offshore windfarm off the eastern point of Long Island. The project developer is South Fork Wind, LLC ("South Fork"), formerly known as Deepwater Wind South Fork, LLC.

25. The South Fork project plans to bring electricity onshore through a high-voltage transmission cable. The cable will make landfall on Beach Lane in Wainscott, beginning underground at the buried sea-to-shore vault near the south end of Beach Lane and extending northwest along Beach Lane (adjacent to the Mahoney Property). On its way to a so-called "interconnection facility" that will connect the cable to the local electrical power grid, the cable will follow Wainscott Northwest Road (adjacent to the Solomon Property).

26. Burying the cable and placing the six vaults on Beach Lane and other roads in East Hampton will require excavation. This excavation will extend to eleven feet below ground.

27. The cable and the trench in which it is placed will intersect with groundwater that is contaminated with PFAS. Moreover, the cable trench will become a preferential pathway for the movement of PFAS and, as such, will transport PFAS contaminants to locations that otherwise would not be impacted.

28. As a preferential pathway for PFAS, this cable trench will harm Plaintiffs because it will facilitate the movement of higher concentrations of PFAS onto the Mahoney Property and the Solomon Property. This movement of PFAS will more likely than not contaminate or further contaminate the water supply in the wells located on the Mahoney Property, the Solomon Property, and other property in the area.

29. This contamination will jeopardize private and public drinking wells in the area.

30. The South Fork cable will also pass through or near other known PFAS plumes in East Hampton and, as such, will potentially be in contact with groundwater.

31. All of the risks to groundwater, private wells, and public wells in the vicinity of the cable corridor will not be fully known until additional groundwater monitoring wells are installed within the corridor and additional studies are conducted.

32. The onshore cable component of the South Fork project raises significant environmental impacts for Plaintiffs and the Wainscott community at-large, especially in light of the likely adverse impacts on groundwater.

**C.     Defendants' EIS failed to take a hard look at PFAS contamination.**

33. To complete the South Fork project, the developer needed approvals and permits from numerous agencies, including from Defendants here:

(a) BOEM's Record of Decision ("BOEM's ROD"), which issued on November 24, 2021;

(b) BOEM's approval of South Fork's Construction and Operations Plan ("BOEM's COP approval"), which issued on January 18, 2022; and

(c) a dredging permit from the Army Corps ("Army Corps' Permit"), which issued on January 18, 2022.

34. To determine whether and under what conditions to grant the approvals and permits, Defendants were required to craft an environmental impact statement ("EIS") in accordance with NEPA and its implementing regulations. Accordingly, BOEM (with the Army Corps' cooperation) issued a "Final EIS" on August 16, 2021.

35. In the process leading to the Final EIS, BOEM and the Army Corps received several comments (one attaching a detailed report) alerting them to the serious issue of PFAS contamination in East Hampton. Yet despite these comments, the Final EIS does not take a hard look at the issue or otherwise engage in any full and fair discussion of the issue.

36. In particular, the Final EIS acknowledges the existence of PFAS in East Hampton but offers no assessment of whether the South Fork project exacerbates the risk of East Hampton's drinking water supply becoming contaminated or further contaminated with PFAS.

37. In granting the approvals and permits listed above, Defendants relied on the perfunctory analysis of potential PFAS contamination in authorizing South Fork to move ahead with trenching a cable in Plaintiffs' neighborhoods and elsewhere in East Hampton.

### D. Plaintiffs have Article III standing and satisfy the zone-of-interests test.

38. Plaintiffs are suffering injury in fact because they not only use the relevant environment; they live there. Moreover, their property is less valuable because of the challenged actions.

39. Plaintiffs' injuries are fairly traceable to Defendants' conduct. South Fork would not be planning to trench a cable from Wainscott Beach through Plaintiffs' neighborhoods to the interconnection facility but for Defendants requiring South Fork to use the Beach Lane route for the onshore cable as a condition of their approvals and permits.

40. Because South Fork cannot legally trench a cable without a permit from Defendant Army Corps, an order from this Court vacating the Army Corps' Permit would redress Plaintiffs' injuries. Moreover, Defendants have the authority to modify their approvals and permits to prevent South Fork from continuing to trench the cable.

41. Plaintiffs satisfy the zone-of-interest test for each of the statutes under which they sue because their injury has an environmental as well as an economic component.

### E. Plaintiffs are challenging final agency action.

42. Each agency action that Plaintiffs challenge is final.

43. Defendant BOEM's ROD and COP approval are self-evidently final decisions, and they so state.

44. The Army Corps' issuance of a permit that is accepted by the applicant, as occurred here, is *always* a final decision under 33 C.F.R. § 331.10.

45. The Final EIS may be challenged under the precept that a "preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review

of the final agency action." 5 U.S.C. § 704.  The Final EIS is "preliminary" to BOEM's ROD, BOEM's COP approval, and the Army Corps' Permit.

## INJUNCTIVE RELIEF ALLEGATIONS

46. Plaintiffs are suffering injury that is actual or imminent because impending construction activities will disturb a known PFAS plume and intersect other areas in which the groundwater is contaminated with PFAS.  That disturbance will likely result in higher concentrations of PFAS on the Mahoney Property and the Solomon Property, not to mention contamination or further contamination of Plaintiffs' well water supply.  As a result, Plaintiffs' properties will be less valuable.

47. That environmental injury is irreparable because it is permanent or at least of long duration, and there is a substantial chance that upon final resolution of the action, Plaintiffs cannot be returned to the positions that they previously occupied.

48. Both the balance of the equities and the public interest favor injunctive relief, in that safeguarding a community's water supply from contamination by dangerous chemicals and ensuring that Defendants comply with the law serve the interests of both Plaintiffs and the public, and they outweigh any harm that might result from a preliminary injunction.

## FIRST CLAIM FOR RELIEF

### (Against all Defendants for violations of NEPA and the APA)

49. Plaintiffs reallege Paragraphs 1–48 above as if set forth in full herein.

50. Under NEPA, 42 U.S.C. § 4332(2)(C), and its implementing regulations, an EIS must provide a full and fair discussion of significant environmental impacts to inform decisionmakers and the public of the reasonable alternatives that would avoid or minimize adverse impacts or enhance the quality of the human environment.  In the EIS, it must be evident the agency took a "hard look" at the environmental consequences of its decision.

51. As described above, Defendants here barely considered the risk of the South Fork project's causing or furthering PFAS contamination in the drinking water supply in East Hampton, let alone took a hard look at this issue. That is, the Final EIS merely acknowledges the existence of PFAS, but it offers no discussion concerning the potential adverse environmental impacts of new or intensified PFAS contamination caused by the South Fork project.

52. In granting approvals and permits in reliance on this deficient Final EIS, Defendants failed to comply with NEPA and its implementing regulations and therefore engaged in final agency action that was arbitrary, capricious, and contrary to law.

53. Under the APA, 5 U.S.C. § 706(2)(A), the Court has the authority and duty to hold unlawful and set aside such agency action in relevant part.

54. Plaintiffs are entitled to a judgment so holding and setting aside.

55. Plaintiffs are further entitled to preliminary and permanent injunctions against any further work permitted by or otherwise pursuant to such unlawful final agency action.

## SECOND CLAIM FOR RELIEF

**(Against Defendants Army and Army Corps for violations of the Clean Water Act and APA)**

56. Plaintiffs reallege Paragraphs 1–48 above as if set forth in full herein.

57. Army Corps regulations implementing Section 404(b)(1) of the Clean Water Act, 33 U.S.C. § 1344(b)(1) provide that "no discharge of dredged or fill material shall be permitted if there is a practicable alternative to the proposed discharge which would have less adverse impact on the aquatic ecosystem, so long as the alternative does not have other significant adverse environmental consequences." 40 C.F.R. § 230.10(a).

58. Under those so-called Section 404(b)(1) Guidelines, the Army Corps must (among other requirements) take a "hard look" at the proposal and offer a meaningful conclusion based on the evidence before the agency.

59. As described above, the Army Corps here barely considered the risk of the South Fork project's causing or furthering PFAS contamination in the drinking water supply in East Hampton, let alone took a hard look at this issue. That is, the Final EIS merely acknowledges the existence of PFAS, but it offers no discussion concerning the potential adverse environmental impacts of new or intensified PFAS contamination caused by the South Fork project.

60. In granting a permit based on this deficient Final EIS, the Army and the Army Corps failed to comply with the Clean Water Act and the Section 404(b)(1) Guidelines and therefore engaged in final agency action that was arbitrary, capricious, and contrary to law.

61. Under the APA, 5 U.S.C. § 706(2)(A), the Court has the authority and duty to hold unlawful and set aside such agency action in relevant part.

62. Plaintiffs are entitled to a judgment so holding and setting aside.

63. Plaintiffs are further entitled to preliminary and permanent injunctions against any further work permitted by or otherwise pursuant to such unlawful final agency action.

### THIRD CLAIM FOR RELIEF

**(Against Defendants Interior and BOEM for violations of OCSLA and the APA)**

64. Plaintiffs reallege Paragraphs 1–48 above as if set forth in full herein.

65. OSCLA provides that BOEM "shall ensure that any activity under this subsection [authorizing leases, easements, or rights-of-way for energy and related purposes] is carried out in a manner that provides for . . . protection of the environment." 43 U.S.C. § 1337(p)(4)(B).

66. As described above, BOEM here did not ensure that the South Fork project provided for the protection of East Hampton's groundwater from PFAS contamination. That is, the Final EIS merely acknowledges the existence of PFAS, but it offers no discussion concerning the potential adverse environmental impacts of new or intensified PFAS contamination caused by the South Fork project.

67. In granting approvals based on this deficient Final EIS, Interior and BOEM failed to comply with OCSLA and therefore engaged in final agency action that was arbitrary, capricious, and contrary to law.

68. Under the APA, 5 U.S.C. § 706(2)(A), the Court has the authority and duty to hold unlawful and set aside such agency action in relevant part.

69. Plaintiffs are entitled to a judgment so holding and setting aside.

70. Plaintiffs are further entitled to preliminary and permanent injunctions against any further work permitted by or otherwise pursuant to such unlawful final agency action.

## NO PRIOR APPLICATIONS

71. No prior application for this or any similar relief has been made in this Court.

## PRAYER FOR RELIEF

72. Wherefore, Plaintiffs pray for relief as follows:

(a) a temporary restraining order against any further work on the onshore cable portion of the South Fork project permitted by or otherwise pursuant to the approvals or permits challenged herein;

(b) a preliminary injunction against such work;

(c) a permanent injunction against such work;

(d) a declaratory judgment holding unlawful and setting aside in relevant part the final agency action challenged herein;

(e) costs of suit herein; and

(f) such other relief as the Court deems just and proper.

| | |
|---|---|
| Dated:  March 9, 2022 | HICKS THOMAS LLP |
| | |
| | */s/ Crystal V. Venning* |
| | Eric Grant (*pro hac vice* application impending) |
| | grant@hicks-thomas.com |
| | John B. Thomas (*pro hac vice* application impending) |
| | jthomas@hicks-thomas.com |
| | Crystal V. Venning (New York Bar No. 5294681) |
| | cvenning@hicks-thomas.com |
| | Justin R. Braga (*pro hac vice* application impending) |
| | jbraga@hicks-thomas.com |
| | 700 Louisiana Street, Suite 2300 |
| | Houston, Texas 77002 |
| | Telephone:  (713) 547-9100 |
| | Facsimile:   (713) 547-9150 |
| | |
| | *Counsel for Plaintiffs* |