UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
PAMELA MAHONEY, et al.,

               Plaintiffs,

  -against-

U.S. DEPARTMENT OF THE
INTERIOR, et al.,

               Defendants.
--------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 22-cv-01305-FB-ST

*Appearances*:
*For the Plaintiffs*:
ERIC GRANT
Hicks Thomas LLP
701 University Ave., Ste. 106
Sacramento, CA 95825

JOHN B. THOMAS
JUSTIN BRAGA
CRYSTAL VICTORIA VENNING
Hicks Thomas LLP
700 Louisiana, Ste. 2300
Houston, TX 77002

*For Defendants*:
VINCENT LIPARI
United States Attorney's Office
Eastern District of New York
610 Federal Plaza, 5th Floor
Central Islip, NY 11722

*For Intervenor Defendant*:
JANICE SCHNEIDER
STACEY VANBELLEGHAM
Lathan & Watkins LLP
555 Eleventh St., N.W.
Ste. 1000
Washington, D.C. 20004

KEGAN ANDREW BROWN
Lathan & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020

1

**BLOCK, Senior District Judge:**

Plaintiffs Pamela Mahoney, Michael Mahoney, Lisa Solomon, and Mitch Solomon ("Plaintiffs") are two married couples with residences in the Wainscott hamlet of East Hampton, New York. They seek a preliminary injunction[1] to halt onshore trenching for the South Fork Wind Farm and South Fork Export Cable Project (the "project"). Plaintiffs claim that the onshore digging will disrupt perfluoroalkyl and polyfluoroalkyl substances ("PFAs") present in the groundwater, worsening the existing PFAS pollution in the wells on Plaintiffs' properties. Defendants U.S. Department of the Interior ("DOI"), Bureau of Ocean Energy Management ("BOEM"), U.S. Department of the Army ("Army"), and U.S. Army Corps of Engineers ("Army Corps") (together, "Defendants") are the federal government agencies that issued the permits for the offshore portion of the project and the final environmental impact statement ("FEIS") required by law to grant those permits. Defendant-Intervenor South Fork Wind, LLC ("SFW") is the developer of the project. For the following reasons, Plaintiff's motion is denied.

---

[1] The Court previously denied the Plaintiffs' First and Second Motions for Order to Show Cause insofar as they pertained to the temporary restraining order that plaintiffs sought. Therefore, the Court only addresses the preliminary injunction in this order.

## I.   FACTS

SFW is the developer of a commercial wind farm off the eastern shore of Long Island. The wind farm is located in federal waters 35 miles east of Montauk Point, Long Island. To export the energy from the windmills to an existing onshore electric grid in East Hampton, trenches will be excavated to store underground cables which will transfer the energy. The onshore route for the underground electric cables will pass by properties owned by the Plaintiffs in Wainscott. Plaintiffs, whose groundwater is presently contaminated by PFAS to the extent that they do not use their onsite water wells for drinking water, allege that trenching will exacerbate PFAS contamination of the water on their properties.

The permits to conduct the offshore portion of the project were issued by Defendants. For the onshore portion of the project, and specifically the trenching that Plaintiffs claim will lead to further contamination of their groundwater, the permits were issued by the New York Public Service Commission ("NYPSC"). After years of administrative proceedings, the NYPSC issued a Certificate of Environmental Compatibility and Public Need under Article VII of the Public Service Law allowing the project to move forward. These proceedings considered, among other things, the potential of the project to exacerbate PFAS contamination. The public was able to participate in the proceedings through hearings and the submission of testimony or comments. Plaintiffs participated in this process. The

NYPSC found that the project would not exacerbate existing PFAS contamination, in part because as proposed, the project provided for preventative measures to ensure that groundwater flow was not materially altered. The NYPSC later denied a rehearing of the issue, holding that petitioners had not submitted sufficient evidence to demonstrate that the project's provisions for dealing with PFAS were inadequate.

Subsequently, a non-profit organization called Citizens for the Preservation of Wainscott, Inc. ("CPW") appealed NYPSC's decision to New York state court, asking the court to enjoin SFW from onshore trenching. The state court denied the appeal on January 26, 2022. Separately, CPW and the Plaintiffs in this action filed a petition in New York state court challenging the easement that the town of East Hampton had granted to SFW for the trenching in question. The state court denied that petition on February 17, 2022. It held that any potential migration of PFAS as a result of the project could not stem from the grant of the easement, but from the manner in which the trenching is conducted. The court also found that challenges to the manner of construction were properly considered by the NYPSC, and that any further challenges to this should have been brought in the NYPSC's proceedings, not before the state court.

On March 9, 2022, Plaintiffs brought the current action. They argue that Defendants did not conduct an adequate review of the project's effect on PFAS contamination in the FEIS, and therefore violated the National Environmental Policy

4

Act ("NEPA"), the Clean Water Act ("CWA"), Outer Continental Shelf Lands Act ("OCSLA"), and Administrative Procedure Act ("APA"). Plaintiffs seek preliminary injunctive relief to halt construction of the onshore export cable.

## II.   PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). If an injunction "disrupt[s] the status quo, a party seeking one must meet a heightened legal standard by showing 'a clear or substantial likelihood of success on the merits.'" *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 37 (2d Cir. 2018) (quoting *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 294 (2nd Cir. 2012)).

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983). To establish irreparable harm, a movant "must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied

by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (internal quotation omitted).

### III.   ANALYSIS

Plaintiffs argue that without a preliminary injunction they will be irreparably harmed by the likely exacerbation of preexisting PFAs contamination of the groundwater on their properties. To succeed on this prong, Plaintiffs must demonstrate that irreparable harm is not just possible, but likely. *See Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). Plaintiffs have failed to do so. They rely heavily on their expert John A. Conrad's ("Conrad") declaration which concludes that "it is likely that the trench will become a preferential pathway for PFAS movement, carrying PFAS contaminants to locations that would otherwise not be impacted [...] and, more likely than not, will contaminate or further impact the Mahoney's water supply well located on their property." Declaration of John A. Conrad at ¶ 16-17. However, Conrad's assertion is conclusory. He does not provide support as to why this result is "likely," nor does he address the effect of the mitigation measures provided for in SFW's plan, which was approved by the NYPSC.

At oral argument, Plaintiffs' counsel stated that "one problem with PFAS is that it's difficult to remediate." Tr. at 9.[2] However, it is possible to remediate PFAS contamination. *See* Declaration of Kenneth Bowes at ¶ 29. Currently, the New York State Department of Environmental Conservation is undertaking remedial measures in East Hampton to address PFAS contamination in the area. *See id*. This likewise undercuts the Plaintiffs' claims of irreparable harm. Also, assuming that the project risks spreading PFAS, counsel for the Defendants argues that "[t]here are measures in place" to ensure that this does not occur. Tr. at 12. These measures were conditions on the issuance of the project's permits by the NYPSC and were later incorporated by reference into the FEIS by the federal agencies. Tr. 12. In addition, PFAS already exists on Plaintiffs' properties. Finally, that Plaintiffs failed to seek injunctive relief in this court until months after the FEIS was issued and until after they received unfavorable decisions in state court further "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995) (quoting *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 277 (2nd Cir. 1985)).

---

[2] The parties were heard at oral argument on April 6, 2022.

## CONCLUSION

The Court finds that Plaintiff failed to establish irreparable harm—"the single most important prerequisite for the issuance of a preliminary injunction," *Masel Supply Co. Corp.*, 719 F.2d at 45—and so denies Plaintiff's motion.

**SO ORDERED**.

                                                         /S/ Frederic Block
                                                         FREDERIC BLOCK
                                                         Senior United States District Judge

Brooklyn, New York
April 12, 2022