UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - -- - - - -X
PAMELA MAHONEY;
MICHAEL MAHONEY;
LISA SOLOMON; and
MITCH SOLOMON,

                 Plaintiffs,

      -against-

U.S. DEPARTMENT OF THE
INTERIOR; BUREAU OF OCEAN ENERGY
MANAGEMENT; U.S. DEPARTMENT OF
THE ARMY; and U.S ARMY CORPS
OF ENGINEERS,

                 Defendants

        And

SOUTH FORK WIND LLC,

                Defendant-Intervenor,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Civil Action No.
22 CV 01305

(Block, J.)
(Tiscione, M.J.)

**FEDERAL DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM**

BREON PEACE
United States Attorney
Eastern District of New York
Attorney for Defendant
610 Federal Plaza
Central Islip, New York 11722

VINCENT LIPARI
Assistant United States Attorney

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 3

   A.  THE SOUTH FORK WIND PROJECT ...................................................... 3
   B.  CHALLENGES TO SFW'S ONSHORE CONSTRUCTION
      IN NEW YORK STATE PROCEEDINGS .................................................. 5
   C.  ALLEGATIONS OF THE COMPLAINT RELEVNT
      TO STANDING           ........................................................... 8
   D.  PLAINTIFF'S APPLICATIONS FOR IINJUNCTIVE RELIEV ............... 10

ARGUMENT ............................................................................................................. 11

PLAINTIFFS' COMPLAINT MUST BE DISMISSED
FOR LACK OF STANDING AND FAILURE
TO STATE A CLAIM ............................................................................................... 11

   1.  The Complaint Must Be Dismissed In Its Entirety
      Because Plaintiffs Lack Standing To Bring This Action ........................... 11

      A.  Plaintiffs Fail to Show Injury In Fact ................................................. 12
      B.  Plaintiffs Fail to Show Any Injuries
          Caused By The Federal Defendants ................................................... 15
      C.  Plaintiffs Fail To Show That Their Alleged
          Injuries Are Redressable By The Federal Defendants ........................ 18

   2.  Plaintiffs Second Claim Alleging a Violation Of The
      CWA Must Be Dismissed For Failure To State a Claim ............................ 19

   3.  Plaintiffs Third Claim Alleging a Violation of OCSLA Must
      Be Dismissed For Failure To State a Claim .............................................. 19

   CONCLUSION ..................................................................................................... 20

## TABLE OF AUTHORITIES

*Ali v. New York City Envtl. Control Bd.*, 670 Fed. Appx. 26 (2d Cir. 2016)................................ 12

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013).................................................. 12

*Denson v. Donald J. Trump for Pres., Inc.*, 530 F. Supp. 3d 412 (S.D.N.Y. 2021) ..................... 11

*Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59 .............................................. 18

*E.M. v. New York City Dept. of Educ.*, 758 F.3d 442 (2d Cir. 2014) ........................................... 18

*Fisheries Survival Fund v. Haaland*, 858 Fed. Appx. 371 (D.C. Cir. 2021) .............................. 19

*Friends of Animals v. Ashe*, 808 F.3d 900 (D.C. Cir. 2015) ........................................................ 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 505 (1992) ..................................................... 11, 12, 15

*Martin v. United Bridge Capital, LP*, 21-1790-CV, 2022 WL 2166399
  (2d Cir. June 16, 2022) ............................................................................................................. 12

*Merola v. Cuomo*, 427 F. Supp. 3d 286 (N.D.N.Y. 2019) ........................................................... 12

*Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) ................................. 11

*Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26 (1992) .................................... 15

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ......................................................................... 11, 12

*Sprint Commc'ns Co. v. APCC Servs., Inc.*, 554 U.S. 269 (2008) .............................................. 18

*Vengalattore v. Cornell U.*, 36 F.4th 87 (2d Cir. 2022) ............................................................... 11

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008)......... 12

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) ............................................................................... 12

*Xin Wei Lin v. Chinese Staff & Workers' Ass'n*, 527 Fed. Appx. 83............................................ 12

## STATUTES

33 U.S.C. § 1344(a) ....................................................................................................................... 17

33 U.S.C. § 1362(7) ....................................................................................................................... 17

33 U.S.C. §§ 1311(a) ..................................................................................................................... 17

43 U.S.C. § 1337(p)(1) ................................................................................................................... 16

43 U.S.C. § 1337(p)(4)(B) ............................................................................................................. 19

43 U.S.C. § 1349(a)(2)(A) .................................................................... 19

43 U.S.C. §§1331 .................................................................................. 16

43 U.S.C. §§1331(a) ............................................................................. 16

## **RULES**

Fed. R. Civ. P. 12(b)(1) ................................................................ 1, 11, 20

Fed. R. Civ. P. 12(b)(6) ................................................................ *passim*

Regulations

30 CFR § 585.211 ................................................................................... 3

33 C.F.R. § 328.3(a) ............................................................................. 17

33 C.F.R. §§ 328.1 ................................................................................ 17

C.F.R. § 328.4(b) ................................................................................. 17

## PRELIMINARY STATEMENT

Defendants U.S. Department of the Interior; Bureau Of Ocean Energy Management ("BOEM"); U.S. Department of the Army; and U.S Army Corps of Engineers (the "Army Corps") (the "Federal Defendants"), by their attorney, Breon Peace, United States Attorney, Vincent Lipari, Assistant United States Attorney, of counsel, respectfully submit this memorandum of law in support of their motion: (1) to dismiss the complaint in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction because plaintiffs lack standing; or, (2) to dismiss plaintiffs second and third claims, pursuant to Fed,. R. Civ. P. 12(b), for failure to state a claim.

This action arises out of a project authorized by BOEM and the Army Corps that would allow defendant-intervenor South Fork Wind LLC ("SFW") to develop a commercial-scale offshore wind energy facility on the Outer Continental Shelf that will export the power generated to the existing mainland electric grid in East Hampton, New York. SFW will, pursuant to authorizations issued by the New York State Public Service Commission ("PSC") and other State and local authorities, excavate trenches along an onshore route for the underground installation of electrical cables. Plaintiffs, who own property along the route, in Wainscott, New York, seek to enjoin the onshore trenching and installation of cables because they contend it will create a "preferential pathway" which will exacerbate or spread groundwater contaminated with poly-/perfluoroalkyl substances ("PFAS") into their private water wells.

As shown below, the complaint must be dismissed in its entirety because this court lacks subject matter jurisdiction over this action. Plaintiffs, who seek declaratory and injunctive relief directed only at the onshore trenching and installation of cables, fail to show <u>any</u>, let alone all, of the three elements necessary to establish standing to bring this action.

<u>First</u>, plaintiffs cannot show <u>any</u> injury in fact from the onshore trenching. Plaintiffs and similarly situated parties have repeatedly asserted their preferential pathway theory in an attempt

to enjoin the onshore trenching in numerous New York State administrative and judicial proceedings. However, every New York State court and administrative body has rejected such speculation. This court has also rejected plaintiffs' preferential pathway claim and denied their request for a preliminary injunction, holding, among other things, that plaintiffs failed to show irreparable injury from the onshore trenching. <u>Mahoney v. U.S. Dept. of the Int.</u>, 22-CV-01305-FB-ST, 2022 WL 1093199 (E.D.N.Y. Apr. 12, 2022).

<u>Second</u>, plaintiffs cannot show that any alleged injury in fact is caused by the actions of the Federal Defendants. The onshore construction activity was authorized by the PSC and other State and local authorities. It is not subject to the Federal Defendants' jurisdiction and control. Indeed, plaintiffs and similarly interested parties did not seek any relief against, mention or involve the Federal Defendants in any of the New York State administrative and court proceedings brought to challenge the onshore trenching. This action, which seeks to challenge the onshore portion in the guise of federal claims against the Federal Defendants, is nothing more than a last gasp attempt to repackage failed theories to seek a different result based on the same underlying claims soundly rejected by every court (including this one) that has considered them.

<u>Third</u>, plaintiffs cannot show that their concerns about the onshore trenching are redressable by any relief against the Federal Defendants inasmuch as such work is within the exclusive jurisdiction and control of the PSC and New York State and local authorities.

Even if, <u>arguendo</u>, plaintiffs had standing, nonetheless, pursuant to Fed. R. Civ. P. 12(b)(6), their second claim, alleging violations of the Clean Water Act, must be dismissed because the onshore trenching does not involve "waters of the United States"; and their third claim, alleging violations of the Outer Continental Shelf Lands Act must be dismissed, for failure to give prior 60 day written notice to BOEM.

**STATEMENT OF FACTS**

**A.     THE SOUTH FORK WIND PROJECT**

The South Fork Wind Farm and South Fork Export Cable Project (the "Project") is located in the area of BOEM's Renewable Energy Lease Number OCS-A 0517 on the Outer Continental Shelf ("OCS"), 19 miles southeast of Block Island, Rhode Island, and 35 miles east of Montauk Point, New York. (see Final Environmental Impact Statement ["FEIS"], at i) (copies of all pages in the FEIS referred to herein are annexed collectively as exhibit A to the Declaration of Assistant U.S. Attorney Vincent Lipari ["Lipari Dec."] submitted herewith).[1]

The purpose of the Project is to develop a commercial-scale offshore wind energy facility in the Lease Area with wind turbine generators, an offshore substation, and one transmission cable making landfall in Suffolk County, New York. The Project would contribute to fulfillment of New York's renewable energy requirements, particularly the State's goal of 9,000 MW of offshore wind energy generation by 2030 (FEIS, at ii).

Through a competitive leasing process under 30 CFR § 585.211, Deepwater Wind New England, LLC was awarded the commercial lease for the Project (id.). This lease was later assigned to defendant-intervenor, SFW (id.). In June 2018, SFW submitted a construction and operations plan ("COP") to BOEM for the Project (id.). On August 16, 2021, BOEM issued the FEIS in accordance with the National Environmental Policy Act ("NEPA") to consider and disclose potential environmental impacts associated with the construction and installation, operation and management of the Project. The Army Corps participated in the development and review of the FEIS as a cooperating agency, and it later adopted the FEIS (FEIS, at 1, 4-5, D-7). On November

---

[1]     The FEIS consists of 1,317 pages. Due to its volume, it will not be attached in full. It can be found online at: https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/SFWF%20FEIS.pdf

3

24, 2021, BOEM issued a Record of Decision ("ROD"), which summarized the agencies' decisions, including BOEM's decision to approve the Project. The Army Corps' New York District finalized its own ROD for the South Fork Project on January 14, 2022 and issued a permit under § 404 of the Clean Water Act and § 10 of the Rivers and Harbors Act of 1899 based on that ROD on January 20, 2022. Approval of a COP only authorizes activities on the OCS.

The Project has two components; the South Fork Wind Farm ("SFWF") and the South Fork Export Cable project ("SFEC"). The SFWF includes up to 12 wind turbine generators, submarine cables between the wind turbine generators (inter-array cables), an offshore substation and an onshore operations and maintenance facility (FEIS, at 1-1). The SFEC includes an electric cable and an interconnection facility that connects the SFWF to the existing mainland electric grid in East Hampton, New York, and delivers power to the South Fork of Suffolk County, Long Island (id.). The SFEC has an offshore and onshore component.

The SFEC offshore component involves installation of a power cable extending through federal waters from the offshore substation, crossing into state waters 3 nautical miles offshore New York State (FEIS, at 2-4). The onshore component begins at the transition vault located at the landing site and ends at the interconnection facility (id.). (Because plaintiffs have no complaint about the SFWF or the offshore component of the SFEC, they will not be discussed further).[2]

The onshore SFEC component consists of an onshore, underground power cable that SFW will install in a new underground electrical duct bank (FEIS, at 2-8). The duct bank consists of a conduit surrounded by concrete through which the SFEC would run, underground along a Beach Lane route, through certain streets in the town of Wainscott, across Montauk Highway, along the

---

[2] See Plaintiffs' Memorandum of Law in Support of Order to Show Cause for a Temporary Restraining Order or Preliminary Injunction, at 2 [ECF 7] ("[T]he present dispute concerns [only] the 'landing' and onshore route of that cable to the facility").

Long Island Rail Road and to the interconnection facility (FEIS, at 2-4 - 2-5). To install the underground components, SFW will remove pavement, gravel, or dirt and excavate a trench of up to 4 feet wide and 8 feet deep into which the conduits will be lowered and the power cable installed. SFW will then backfill the trench and restore the area to its original condition (FEIS, at 2-8).

As explained below, the State of New York Public Service Commission (the "PSC") permitted construction and design of the onshore part of the Project, the SFEC.

**B.     CHALLENGES TO SFW'S ONSHORE CONSTRUCTION IN
        NEW YORK STATE PROCEEDINGS**

On March 18, 2021, the PSC, after years of public hearings, testimony and other administrative proceedings, issued an Order Adopting Joint Proposal ("March 18, 2021 PSC Order"), in which it granted SFW's predecessor, Deepwater, a Certificate of Environmental Compatibility and Public Need under Article VII of the Public Service Law permitting the design and construction of the onshore portion of the SFEC.[3] The March 18, 2021 PSC Order and Appendices consist of 353 pages. The relevant pages are collected and attached as exhibit B to the Lipari Dec. The proceedings were multifaceted, complex and involved many private individuals and citizen groups, who either supported or raised objections to the onshore construction.[4]

---

[3]     The docket contains 1227 entries, from September 14, 2018 to date. See https://documents.dps.ny.gov/public/MatterManagement/CaseMaster.aspx?Mattercaseno=18-T-0604. The March 18, 2021 PSC Order is docket entry 236.

[4]     The Joint Proposal was signed, inter alia, by Deepwater, the New York State Department of Public Service, the New York State Department of Environmental Conservation, the New York State Office of Parks, Recreation and Historic Preservation, the New York State Department of State, the New York State Department of Transportation, the Town of East Hampton, PSEG Long Island. See March 18, 2021 PSC Order at 2. The Joint Proposal was opposed by, among others, the Citizens for the Preservation of Wainscott ("CPW"). As noted in SFW's March 16, 2022 letter (ECF 26), at 3, ns. 3 and 4, plaintiffs Pamela and Michael Mahoney and Lisa and Mitchel Solomon submitted comments and/or testimony opposing the Joint Proposal.

While a detailed discussion of the proceedings is beyond the scope of the instant motion, for purposes relevant here, the PSC considered and rejected, among other things, the same claim plaintiffs make here; i.e., that the trenching of underground cables along the onshore route will result in or exacerbate PFAS contamination. In relevant part, the PSC ruled:

> We agree with the Applicant [Deepwater] and DPS [New York State Department of Public Service] Staff and find that the Project, as proposed and conditioned will not exacerbate existing PFAS. If the Applicant encounters contaminated soil or groundwater measures to ensure that the material is handled and disposed of properly are required by the Proposed Certificate Conditions. Pre-construction testing and the development of specific plans for handling any contamination encountered are required and will avoid or minimize any impacts related to potential contamination. Similarly, nothing in the record supports the concern that the Project's design including duct banks, splicing or transition vaults will materially alter the flow of groundwater regardless of whether contamination is encountered.

March 18, 2021 PSC Order, at 102 (footnote omitted).

After petitioners moved for reconsideration of the March 18, 2021 PSC Order on various grounds, including the alleged danger presented by encountering and spreading PFAS contamination (PSC docket nos. 220-222, 225, 227, 230), the PSC, by an order dated August 12, 2021 (PSC docket no. 93), denied a rehearing, ruling, in part relevant to the instant application:

> The Commission also rejects Petitioners' argument that the Certificate Order ignored the existence of poly-/perfluoroalkyl substances (PFAS) existing along the Project route supported as part of the Joint Proposal. It is notable that, in making this argument, Petitioners mischaracterize the aspect of the Certificate Order that examined issues related to PFAS. It is not that the Commission ignored the existence of PFAS contamination, and indeed the Certificate Order notes that the Administrative Law Judge assigned to the case specifically allowed the Petitioners' evidence regarding PFAS into the record. Instead, the Commission determined that such evidence was not sufficiently convincing to demonstrate that the protections provided in the Joint Proposal were inadequate and would not minimize or avoid environmental impacts to the maximum extent practicable. That Petitioners disagree with the

> Commission's determination does not make its determination an error of law or fact.
>
> Indeed, Petitioners seem to argue that the existence of PFAS, and its hazardous characteristics, are enough to establish that the Project's environmental impacts were not minimized to the maximum extent practicable. However, Petitioners do not acknowledge, and therefore do not address any shortcomings, of the Joint Proposal's measures for handling PFAS contamination during project construction and operation.

August 12, 2021 PSC Order at 4-5 (footnotes omitted) (Lipari Dec., Exhibit C).

After their request for a rehearing was denied, petitioners appealed the PSC's March 18, 2021 Order to the Appellate Division, Second Department. Citizens for Preservation of Wainscott, Inc., et al. v. New York State Public Service Commission, et al., 2021-06582 (App. Div. 2d Dep't). By order dated January 26, 2022 (Lipari Dec., Exhibit D), the Appellate Division denied petitioners' application "to enjoin [SFW] from performing excavation and construction concerning the subject project" – i.e., the same work that plaintiffs seek to enjoin upon the instant motion. That proceeding is still pending.

A week later, on February 2, 2021, CPW filed a petition in a separate court action (Lipari Dec., Exhibit E) which challenged the Town of East Hampton's grant of an easement to SFW to enable it to perform the work at issue in the instant motion, i.e., trenching and placement of the cables along the Beach Lane route. Citizens for the Preservation of Wainscott, Inc. et al. v. Town Board of the Town of East Hampton et al., 6018474/2021 (Sup. Ct. Suffolk Co.). Pamela and Michael Mahoney and Mitch and Lisa Solomon, the plaintiffs herein, were among the petitioners. The petition alleged that the Town Board had approved the easement without conducting an adequate environmental review or preparing an environmental impact statement (Petition ¶¶ 10, 41, 118). Among other things, the petitioners alleged that the construction and installation of the

electrical cables along the easement would contaminate the groundwater with PFAS and create a path for the migration of more PFAS-contaminated groundwater (Petition ¶¶ 31, 58, 74, 95-102.

By an order dated February 24, 2022 (docket nos. 125-127) (Lipari Dec., Exhibit F), the court dismissed the action. The court noted the petitioners' concern, among other things, of "the possibility of trenching activities causing migration of nearby plumes of [PFAS] which are known to be present in nearby groundwater" (February 24, 2022 Order at 2). The court specifically addressed the claims by the Solomons, and certain other petitioners, that "digging for the project could cause a known contaminant plume of PFAS to migrate toward their property and their well" (February 24, 2022 Order at 6). The court ruled that this alleged harm could not result from granting the easement, but from how construction activities would be conducted. However, "[t]he way that the Project is conducted is under the purview of the PSC [and] it is clear from the plain language of the Certificate of Environmental Compatibility and Public Need issued on March 18, 2021, that the PSC considered such concerns and created mitigation and monitoring procedures to address them. Any challenge to these procedures should have been brought in those proceedings" (February 24, 2022 Order at 6). The court also addressed claims by the Mahoneys and other petitioners that the Town Board had acted arbitrarily and capriciously in granting the easement because it failed to conduct an environmental review. The court dismissed this claim because the easement was granted subject to and based on the "extensive environmental review [which] was undertaken" by the PSC. (February 24, 2022 Order at 10).

## C.   ALLEGATIONS OF THE COMPLAINT RELEVANT TO STANDING

On March 9, 2022, after all challenges to stop the Project in New York State courts failed, plaintiffs commenced the instant action, this time alleging that it was the Federal Defendants who failed to conduct an adequate review in the FEIS of potential PFAS contamination along the

onshore route. Plaintiffs, while asserting three claims against the Federal Defendants under NEPA, the CWA and OCSLA, complain of and seek relief for alleged "serious environmental problems" caused by "the onshore portion" of the Project (Complaint ¶ 1 see also Complaint ¶ 32 ["[t]he onshore cable component of the [Project] raises significant environmental impacts").

Specifically, plaintiffs allege that the trenching to install the underground cables will "intersect" with groundwater contaminated with PFAS and "will become a preferential pathway" for the movement and spread of PFAS contaminants into unaffected areas (Complaint ¶¶ 1, 27). Plaintiffs acknowledge that the private wells on their respective properties were already contaminated with PFAS before any onshore work had begun and thus they no longer drank the well water but only used it for irrigation and other purposes (Complaint ¶¶ 18, 22). Plaintiffs, however, contend that the onshore trenching work will nonetheless harm them because it will create "a preferential pathway . . . that will facilitate the movement of higher concentrations of PFAS" on their properties and will "more likely than not contaminate or further contaminate" the water in their private wells and other wells in the vicinity (Complaint ¶ 28) (emphasis added).

Plaintiffs allege that they meet the requirements of standing to maintain this action (Complaint ¶¶ 38-41). They supposedly have suffered an injury in fact because they live in and use "the relevant environment" and their property has become less valuable (Complaint ¶ 38). Their injuries are supposedly "fairly traceable" to the Federal Defendants because "[SFW] would not be planning to trench a cable . . .through Plaintiffs' neighborhoods . . . but for Defendants requiring [SFW] to use the Beach Lane route as a condition of their approvals and permits" (Complaint ¶ 39). Plaintiffs contend that their injuries are redressable by this court because South Fork cannot legally trench cables without an Army Corps permit and this court can issue an order vacating that permit and stopping the onshore work (Complaint ¶ 40).

**D.       PLAINTIFFS' APPLICATIONS FOR INJUNCTIVE RELIEF**

In their prayer for relief, plaintiffs seek injunctive and declaratory relief restraining "any further work on the onshore cable portion of the [Project] permitted or otherwise pursuant to the approvals and permits challenged herein" (Complaint ¶ 72).  On March 10, 2021, plaintiffs moved by order to show cause (ECF 10) to restrain the Federal Defendants from "causing or allowing [their] contractors" to continue the onshore trenching and installation of cables.  By an order dated March 14, 2022 (ECF 17) and an electronic order entered March 17, 2022, this court twice denied plaintiffs' application for a temporary restraining order.

After a hearing on April 6, 2022, this court, by a memorandum and order dated April 12, 2022 (ECF 42), denied plaintiffs' application for a preliminary injunction to halt the onshore work, ruling, inter alia, that plaintiffs failed to establish irreparable injury.  The court's decision is reported at Mahoney v. U.S. Dept. of the Int., 22-CV-01305-FB-ST, 2022 WL 1093199 (E.D.N.Y. Apr. 12, 2022) and will be referred to below, passim.

<u>**ARGUMENT**</u>

**PLAINTIFFS' COMPLAINT MUST BE DISMISSED FOR LACK OF STANDING AND FAILURE TO STATE A CLAIM**

As shown below, plaintiffs' complaint must be dismissed in its entirety, pursuant to Fed. R. Civ. P. 12(b)(1), because plaintiffs lack standing and thus this court does not have subject matter jurisdiction over their claims. Even if, <u>arguendo</u>, plaintiffs had standing, nonetheless their second claim, alleging violations of the Clean Water Act, and their third claim, alleging violations of the Outer Continental Shelf Lands Act must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

1.    **The Complaint Must Be Dismissed In Its Entirety Because Plaintiffs Lack Standing To Bring This Action**

"To have Article III standing, (1) the plaintiff must have suffered an injury in fact, (2) there must be a causal connection between the injury and the conduct complained of, and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." <u>Vengalattore v. Cornell U.</u>, 36 F.4th 87, 112–13 (2d Cir. 2022) (citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 505, 560-61 (1992) (internal quotation marks omitted). "These are the 'irreducible constitutional minimum' prerequisites for Article III standing." <u>id.</u> (quoting <u>Lujan</u>, at 560). Plaintiffs, as the parties invoking federal jurisdiction, have the burden of establishing all three elements. <u>Denson v. Donald J. Trump for Pres., Inc.</u>, 530 F. Supp. 3d 412, 424–25 (S.D.N.Y. 2021) (citing <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016)).

"Because standing is jurisdictional under Article III of the United States Constitution, it is a threshold issue in all cases." <u>Shearson Lehman Hutton, Inc. v. Wagoner</u>, 944 F.2d 114, 117 (2d Cir. 1991) (internal citation omitted). "When standing is lacking, the court's subject matter jurisdiction is implicated and the proper method for seeking dismissal on that basis is Rule

12(b)(1), which would allow for the submission and consideration by the court of matters outside the pleadings." Merola v. Cuomo, 427 F. Supp. 3d 286, 288, n.2 (N.D.N.Y. 2019) (citations omitted). See, e.g. Martin v. United Bridge Capital, LP, 21-1790-CV, 2022 WL 2166399, at *2 (2d Cir. June 16, 2022) (citations omitted); Ali v. New York City Envtl. Control Bd., 670 Fed. Appx. 26, 27 (2d Cir. 2016) (unpublished) ("When determining standing, a district court may consider evidence outside the pleadings") (citation omitted); Xin Wei Lin v. Chinese Staff & Workers' Ass'n, 527 Fed. Appx. 83, 87, n. 1 (2d Cir. 2013)(unpublished) ("In resolving a question of standing, the Court may refer to evidence outside the pleadings") (citations omitted).

Here, plaintiffs cannot show that they meet any, let alone all three elements of standing, as required for this court to have subject matter jurisdiction over this case.

A.     **Plaintiffs Fail to Show Injury In Fact**

To satisfy standing an "injury in fact" must be "concrete and particularized" as well as "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (quotation marks and citations omitted). "Concreteness" refers to an injury that is "real, and not abstract." Spokeo, 578 U.S. at 340 (internal quotation marks omitted). "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Id. (quoting Lujan, 504 U.S. at 560 n.1). "As a general rule, this means 'plaintiff must have personally suffered." W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 107 (2d Cir. 2008). "Allegations of possible future injury do not satisfy the requirements of Art[icle] III." Whitmore v. Arkansas, 495 U.S. 149, 158 (1990). Rather, there must be "a 'substantial risk' that harm will occur." Clapper v. Amnesty Int'l USA, 568 U.S. 398, 414 n.5 (2013) (quotation marks and citations omitted).

Here, plaintiffs do not allege any actual, present injury. They acknowledge that their well water was contaminated with PFAS before any onshore trenching work began. However, they

allege a possible future injury because the trenching and placement of cables "will intersect" with PFAS contaminated groundwater and "will become a preferential pathway for the movement of PFAS contaminants" that "will more likely than not contaminate or further contaminate" the water in their private wells (Complaint ¶¶ 27-28). These allegations do not establish a substantial risk of injury because they are conclusory and unsupported by a <u>single</u> allegation of fact.

Indeed, plaintiffs' contention that the onshore trenching work will exacerbate PFAS contamination or cause a "preferential pathway" for groundwater contaminated with PFAS was thoroughly reviewed and rejected by the PSC, after it had conducted years of extensive public proceedings. The PSC determined that the Certificate of Environmental Compatibility and Public Need and the Joint Proposal, under which SFW was authorized to perform the onshore trenching work, contained sufficient protections to minimize or avoid environmental impacts, including PFAS contamination. <u>See</u> August 12, 2021 PSC Commission Order at 4-5 (Lipari Dec. Exhibit C); <u>Mahoney</u>, 2022 WL 1093199, at *1 (noting that "after years of administrative proceedings," in which the public and plaintiffs participated, the PSC "found that the project would not exacerbate existing PFAS contamination, in part because as proposed, the project provided for preventative measures to ensure that groundwater flow was not materially altered"; the PSC denied a rehearing because "petitioners had not submitted sufficient evidence to demonstrate that the project's provisions for dealing with PFAS were inadequate").

In those proceedings, the PSC had already addressed the arguments that plaintiffs' expert, John Conrad, makes here in his March 10, 2022 declaration (ECF 7, attachment 15) and his March 15, 2022 supplemental declaration (ECF 25, attachments 3-7) in support of plaintiffs' request for a preliminary injunction. In his declarations, Conrad opines, without providing any evidentiary basis or methodology, that, in sum and substance, the onshore trenching will cause imminent injury

because the trenching and placement of cables will proceed along a route with known PFAS contamination; and that SFW has neglected to conduct PFAS testing where groundwater was found to be at or near the base of the cable trenches, and as a result the trenching will create a preferential pathway for the spread of groundwater contaminated with PFAS (see Conrad Dec. at ¶ 17). But Conrad, without explanation, ignores the fact that the PSC had already soundly rejected these contentions, does not even mention the Certificate and ignores and, thus, does not address the preventative measures put in place under the Certificate to avoid the spread or exacerbation of PFAS contaminated groundwater. Specifically, in issuing the Certificate, and rejecting challenges alleging that the onshore trenching would cause or exacerbate the spread of PFAS-contaminated groundwater, the PSC concluded (and Conrad ignores, that):

> [T]he Project, as proposed and conditioned will not exacerbate existing PFAS. If [SFW] encounters contaminated soil or groundwater measures to ensure that the material is handled and disposed of properly are required by the Proposed Certificate Conditions. Pre-construction testing and the development of specific plans for handling any contamination encountered are required and will avoid or minimize any impacts related to potential contamination. Similarly, nothing in the record supports the concern that the Project's design including duct banks, splicing or transition vaults will materially alter the flow of groundwater regardless of whether contamination is encountered.

March 18, 2021 PSC Order, at 102 (footnote omitted) (emphasis added) (Lipari Dec. Exhibit B).[5]

---

[5]      As noted in the Declaration of Kenneth Bowes, dated March 25, 2022 (ECF 31), submitted in support of SFW's opposition to plaintiffs' request for a preliminary injunction, at ¶ 31(e), on January 20, 2021, the New York State Department of Environmental Conservation submitted an initial statement in support of the Joint Proposal, in which it addressed "potential contamination along the [Project's] proposed Beach Lane route (raised by . . . Michael and Pamela Mahoney . . . )," and "agree[d] that the Project's impact on potential existing contamination will be properly addressed through requirements included in the Joint Proposal." Bowes Dec. ¶ 31(e) (citing NYSDEC SFW Initial Brief and Statement in Support of Joint Proposal, Dkt. 242, at 5, 20 (Jan. 20, 2021), https://documents.dps.ny.gov/public/Common/ViewDoc.aspx?DocRefId=%7b51BE9419-C0D0-4E5F-B855-D787DB877052%7d

In finding that plaintiffs had not shown that they were entitled to a preliminary injunction, this court properly gave no weight to Conrad's declarations, holding that his assertions -- that the onshore trenching would create a preferential pathway, which would likely spread or further contaminate plaintiffs' water supply, with PFAS contamination into plaintiffs' wells -- are "conclusory. [Conrad] does not provide support as to why this result is 'likely,' nor does he address the effect of the mitigation measures provided for in SFW's plan, which was approved by the NYPSC." Mahoney, 2022 WL 1093199, at *2.

Other than Conrad's declarations, which are deficient, plaintiffs have not provided any factual basis for their assertion of a concrete, particularized and imminent injury from the onshore trenching. This court should also take judicial notice of the holdings in the multitude of lawsuits discussed above which were unsuccessfully brought by plaintiffs and/or parties with similar interests against PSC, SFW, the Town of East Hampton and LIPA. In all those cases, not a single court or administrative body granted any relief, including injunctive relief, and all have rejected the contention that the onshore trenching would create a preferential pathway which would cause or exacerbate the spread of PFAS contaminated ground water. In sum, plaintiffs fail to plead or show an injury in fact, as necessary to have standing.

### B. Plaintiffs Fail to Show Any Injuries Caused By the Federal Defendants

To show "a causal connection between the injury and the conduct complained of—the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court." Lujan, 504 U.S. at 560–61 (quoting Simon v. Eastern Ky. Welfare Rights Organization, 426 U.S. 26, 41–42 (1992)).

Plaintiffs cannot show any injuries caused by the actions of the Federal Defendants. The onshore construction activity that plaintiffs seek to restrain is not the result of the Federal

Defendants' actions, but rather is the result of the independent action of the PSC and other New York State agencies and local authorities. See Mahoney 2022 WL 1093199, at *1 ("The permits to conduct the offshore portion of the project were issued by Defendants. For the onshore portion of the project, and specifically the trenching that Plaintiffs claim will lead to further contamination of their groundwater, the permits were issued by the New York Public Service Commission") (emphasis added). As stated in the PSC's amicus brief, at 2 (ECF 31), under New York Public Service Law ("PSL") Article VII, §§ 120-130, the PSC "has sole jurisdiction to review – and to grant, deny, or conditionally grant – applications to build and operate electric and gas transmission lines in accordance with." The PSC's jurisdiction also entails determining the location of the onshore cable and considering alternative locations." Id. at 4-5. Thus, there is no basis to plaintiffs' unsupported allegation that their injuries are traceable to the Federal Defendants because they required SFW to use the Beach Lane route (along plaintiffs' properties) as a condition of their approvals and permits (Complaint ¶ 39). In fact, the Federal Defendants did not require the use of Beach Lane as a condition to their approvals.

BOEM has no authority to approve or regulate the trenching or any other onshore activities. BOEM's authority is limited to regulating certain activities occurring offshore, specifically on the OCS. BOEM's regulatory authority is derived from a delegation of authority from the Secretary of the Interior (the "Secretary"), under the Outer Continental Shelf Lands Act ("OCSLA"), codified at 43 U.S.C. §§1331 et seq. Through OCSLA, Congress granted the Secretary (and the Secretary delegated to BOEM) regulatory jurisdiction over energy resources on the OCS. OCSLA defines the OCS as the submerged lands starting three miles from state coastlines and extending seaward. 43 U.S.C. §§1331(a), 1301(a)(2). See also 43 U.S.C. §

1337(p)(1) (providing that the Secretary of the Interior may grant a lease, easement, or right-of-way on the Outer Continental Shelf for specified activities).

The Army Corps also has no authority to approve or regulate the onshore trenching. The Army Corps has jurisdiction under § 404 of the Clean Water Act ("CWA"), which makes it unlawful to discharge dredged or fill material into § 404 waters without a § 404 permit from the Army Corps. 33 U.S.C. §§ 1311(a), 1344. The Army Corps issues permits under § 404 of the CWA authorizing the discharge of dredged or fill material into "navigable waters" at specified disposal sites. 33 U.S.C. § 1344(a). "Navigable waters," for purposes of § 404 jurisdiction means "waters of the United States, including the territorial seas." CWA, 33 U.S.C. § 1362(7); 33 C.F.R. §§ 328.1, 328.2, 328.3(a)(1), 328.4(a). The "territorial seas" are the waters extending seaward three miles from the "baseline." Id. The landward limit of CWA § 404 jurisdiction in tidal waters extends to the high-tide line, or where adjacent non-tidal waters of the United States are also present, to the ordinary high water mark or the limit of any adjacent wetland. See C.F.R. § 328.4(b),(c). The high-tide line is where land intersects with the water's surface at the maximum height reached by a rising tide. Id. § 328.3(d). "Waters of the United States" also include certain wetlands. See 33 C.F.R. § 328.3(a). Here, plaintiffs do not, and cannot, allege that groundwaters along the Beach Lane landing site are "waters of the United States" as required under CWA § 404 for the Army Corps to have jurisdiction and regulatory authority over the onshore trenching which plaintiffs seek to enjoin.

In sum, inasmuch as the PSC alone has exclusive jurisdiction to approve and regulate the onshore work, including the trenching and installation of cables and the selection of the site where it would occur, plaintiffs cannot show that their alleged injuries resulting from the onshore trenching were caused by any action of the Federal Defendants, as necessary to show standing.

**C.** **Plaintiffs Fail To Show That Their Alleged Injuries Are Redressable By The Federal Defendants**

An injury is redressable if "it is likely and not merely speculative that [it] will be remedied by the relief plaintiff seeks in bringing suit." Sprint Commc'ns Co. v. APCC Servs., Inc., 554 U.S. 269, 273–74 (2008) (internal quotation marks omitted). See also E.M. v. New York City Dept. of Educ., 758 F.3d 442, 450 (2d Cir. 2014) (plaintiffs "must at least make a showing that there is a "substantial likelihood that the relief requested will redress the injury claimed. This requirement lies at the core of the standing doctrine") (citing and quoting Duke Power Co. v. Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 75 n. 20 (1978)).

Because BOEM and the Army Corps issued approvals and permits only for offshore activities, and because plaintiffs only challenge onshore activities (SFW's trenching and installation of cables) which are within the exclusive jurisdiction of the PSC, they cannot allege or show any injury redressable by the Federal Defendants.

Plaintiffs, without even acknowledging the limits on the Federal Defendants' authority, simply argue that injunctive relief against the Federal Defendants is proper because SFW cannot legally trench a cable without a permit from the Army Corps and thus an order from this court vacating the permit would redress plaintiffs' injuries by preventing SFW to continue with the trenching (Complaint ¶ 40). However, even if there were any basis for the court to order the Federal Defendants to modify their permits and approvals (there is none), because those permits and approvals regulate only offshore work, and BOEM and the Army Corps have no jurisdiction and control over the onshore work, modification of the Federal Defendants permits cannot regulate onshore trenching and SFW will be free to continue such work, in accordance with authorization and permission of the PSC, New York State and local authorities.

**2. Plaintiffs Second Claim Alleging A Violation Of The CWA Must Be Dismissed For Failure To State a Claim**

Plaintiffs' Second Claim alleges that the Army Corps violated CWA § 404(b)(1) because it granted a permit to SFW without considering the risk that the Project would cause or exacerbate PFAS contamination of East Hampton's water. Inasmuch as plaintiffs have no complaint about the offshore activities, their claim is directed to the onshore trenching which they allege will create a preferential pathway for the movement and exacerbation of PFAS contaminated groundwater.

Plaintiffs' claim alleging a violation of the CWA must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because, as shown above, at 17, CWA § 404 requires a permit for discharges into waters of the United States. Plaintiffs do not and cannot allege that the onshore trenching involves a discharge into waters of the United States.

**3. Plaintiffs Third Claim Alleging A Violation of OCSLA Must Be Dismissed For Failure To State a Claim**

Plaintiffs' third claims for relief alleges that BOEM did not ensure that the Project provided protection of East Hampton's groundwater from PFAS contamination, and thus it violated OCSLA, 43 U.S.C. § 1337(p)(4)(B) because it did not carry out its activities "in a manner that provides for . . . protection of the environment." (Complaint ¶ 65-66).

Plaintiffs' claim alleging a violation of OCSLA must be dismissed, as a matter of law, pursuant to Fed. R. Civ. P. 12(b)(6) because the complaint does not and cannot allege that plaintiffs provided sixty days notice to BOEM prior to commencing this action, as required under 43 U.S.C. § 1349(a)(2)(A). Fisheries Survival Fund v. Haaland, 858 Fed. Appx. 371, 373–74 (D.C. Cir. 2021) (citing Friends of Animals v. Ashe, 808 F.3d 900, 903, 905 n.2 (D.C. Cir. 2015).

## **CONCLUSION**

For the foregoing reasons, plaintiffs' Complaint must be dismissed in its entirety, pursuant

to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because plaintiffs lack standing.

Alternatively, plaintiffs' second and third claims must be dismissed pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim.

Dated: Central Islip, New York
     September 21, 2022

                                              Respectfully submitted,

                                              BREON PEACE
                                              United States Attorney
                                              Eastern District of New York
                                              Attorney for The Federal Defendants
                                              610 Federal Plaza, 5th Floor
                                              Central Islip, New York 11722

                          By:     <u>s/ VINCENT LIPARI</u>
                                              VINCENT LIPARI
                                              Assistant United States Attorney
                                              (631) 715-7864