UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAMELA MAHONEY; MICHAEL MAHONEY; LISA SOLOMON; and MITCH SOLOMON,<br><br>        Plaintiffs,<br><br>-against-<br><br>U.S. DEPARTMENT OF THE INTERIOR; BUREAU OF OCEAN ENERGY MANAGEMENT; U.S. DEPARTMENT OF THE ARMY; and U.S. ARMY CORPS OF ENGINEERS,<br><br>        Defendants,<br><br>  and<br><br>SOUTH FORK WIND, LLC<br><br>        Defendant-Intervenor | **MEMORANDUM AND ORDER**<br><br>Case No. 22-CV-1305 (FB) (ST) |

*Appearances:*
*For the Plaintiffs*:
ERIC GRANT
JOHN B. THOMAS
CRYSTAL V. VENNING
Hicks Thomas LLP
700 Louisiana Street, Suite 2300
Houston, TX 77002

*For Defendants*:
VINCENT LIPARI,
U.S. Attorney's Office, Eastern District of
   New York
610 Federal Plaza, 5th floor
Central Islip, NY 11722

*For Defendant-Intervenor*:
KEGAN A. BROWN
JANICE SCHNEIDER
STACEY VANBELLEGHAM
1271 Avenue of the Americas
New York, NY 10020
Lathan & Watkins LLP
555 Eleventh St., N.W., Ste. 1000
Washington, D.C. 20004

1

**BLOCK, Senior District Judge:**

Plaintiffs Pamela Mahoney, Michael Mahoney, Lisa Solomon, and Mitch Solomon ("Plaintiffs") live in the Wainscott hamlet of East Hampton, New York. They bring this action seeking to halt construction on the South Fork Wind Farm (the "Wind Farm") and South Fork Export Cable Project (the "Export Cable") (collectively, the "Project"), a wind farm being constructed 35 miles East of Montauk Point. Plaintiffs claim that onshore trenching for the South Fork Export Cable will worsen existing perfluoroalkyl and polyfluoroalkyl ("PFAS") contamination in their groundwater.

Defendants U.S. Department of the Interior, Bureau of Ocean Energy Management ("BOEM"), U.S. Department of the Army, and U.S. Army Corps of Engineers (the "Army Corps") (together, "Defendants") are federal agencies that issued permits for the South Fork Wind Farm, the offshore portion of the Project. They also issued a Final Environmental Impact Statement ("FEIS") required for those permits.[1] Defendant-Intervenor South Fork Wind, LLC ("South Fork Wind") is the Project's developer.

Defendants move to dismiss each of Plaintiffs' claims for lack of standing under Federal Rule of Civil Procedure 12(b)(1), and alternatively to dismiss two of

---

[1] The FEIS is available at https://www.boem.gov/sites/default/files/documents/renewableenergy/state-activities/SFWF%20FEIS.pdf.

Plaintiffs' claims under Rule 12(b)(6). South Fork Wind moves for a judgment on the pleadings under Rule 12(c). For the following reasons, Defendants' Rule 12(b)(1) motion is granted and Plaintiffs' Complaint is dismissed with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Project entails excavating onshore trenches to contain the Export Cable, which will transfer energy generated by the Wind Farm to an onshore electric grid in East Hampton. Part of the cable's onshore route will pass under Beach Lane in Wainscott, which is adjacent to Plaintiffs' properties. Plaintiffs' groundwater is contaminated by PFAS; accordingly, they do not use their water wells for drinking water—only for "other purposes such as irrigation." Compl. ¶ 18. Plaintiffs allege that trenching on Beach Lane will exacerbate this existing PFAS contamination. In addition to introducing new PFAS into their groundwater, they claim the trenching will intersect with existing contamination, becoming a "preferential pathway" for the migration of PFAS into uncontaminated areas. Compl. ¶ 27.

The onshore path of the Export Cable falls under the jurisdiction of the New York Public Service Commission ("NYPSC"), including a 7.6-mile stretch running from the limit of New York's territorial waters to a substation in East Hampton. While Defendants issued permits to construct the offshore Wind Farm, permits for the onshore route of the Export Cable, including the trenching that Plaintiffs complain of, were issued by NYPSC.

3

On March 18, 2021, NYPSC issued a Certificate of Environmental Compatibility and Public Need under Article VII of the New York State Public Service Law, allowing the onshore portion of the Project to move forward. NYPSC's permit came after years of administrative proceedings which considered, among other things, the potential of the Project to exacerbate PFAS contamination. Plaintiffs participated in this process through public hearings and comment. NYPSC found that the Project would not exacerbate existing PFAS contamination, in part because of preventative measures to ensure that groundwater flow was not altered. NYPSC denied a rehearing of the issue, holding that the petitioners, which included Plaintiffs, had not demonstrated that the Project's PFAS provisions were inadequate. Plaintiffs then unsuccessfully challenged NYPSC's final decision in state court, along with East Hampton's easement agreement allowing South Fork Wind to trench on Beach Lane. *See Citizens for the Pres. of Wainscott, Inc. v. New York State Pub. Serv. Comm'n*, 216 A.D.3d 769 (2023) (denying request for rehearing of NYPSC's final decision); Lipari Decl., Dkt. No. 80, at Ex. F (Decision dismissing challenge to easement, captioned *Citizens for Preservation of Wainscott, Inc., et al. v. New York State Public Service Commission, et al.*, 2021-06582 (App. Div. 2d Dep't)).

On August 16, 2021, BOEM issued the FEIS, which the Army Corps adopted. BOEM approved South Fork Wind's construction and operations plan on

January 18, 2022. The Army Corps granted a permit for the Project under § 404 of the Clean Water Act and § 10 of the Rivers and Harbors Act of 1899 on January 20, 2022.

On March 9, 2022, Plaintiffs brought the present action. They claim that the FEIS did not adequately consider the Project's potential effect on PFAS contamination in violation of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4332(2)(C), Clean Water Act, 33 U.S.C. § 1344(b)(1), Outer Continental Shelf Lands Act, 43 U.S.C. § 1337(p)(4)(B), and Administrative Procedure Act.

This Court previously denied Plaintiffs' motion for a preliminary injunction to halt onshore trenching for the Project. *See Mahoney v. U.S. Dep't of the Interior*, No. 22-CV-01305-FB-ST, 2022 WL 1093199 (E.D.N.Y. Apr. 12, 2022).

## II. LEGAL STANDARD

Challenges to standing concern threshold questions of subject matter jurisdiction addressed under Rule 12(b)(1). *Merola v. Cuomo*, 427 F. Supp. 3d 286, 288 n.2 (N.D.N.Y. 2019). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *Razi Sch. v. Cissna*, 519 F. Supp. 3d 144, 148 (E.D.N.Y.) (citing *Makarova*, 201 F.3d at 110)).

"In evaluating constitutional standing, courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Dean v. Town of Hempstead*, 527 F. Supp. 3d 347, 394 (E.D.N.Y. 2021) (internal quotations omitted). However, "[j]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation omitted).

"A Rule 12(b)(1) challenge to subject matter jurisdiction may be facial, that is, based solely on the pleadings, in which case the court must determine whether the pleadings 'allege facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Razi Sch.*, 519 F. Supp. 3d at 148 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). But challenges "may also be fact-based and rely on evidence beyond the pleadings, in which case a plaintiff must present controverting evidence unless the evidence is 'immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing.'" *Id.* (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016)); *see Ali v. New York City Env't Control Bd.*, 670 F. App'x 26, 27 (2d Cir. 2016) ("When determining standing, a district court may consider evidence outside the pleadings.") (internal quotation omitted). Courts "may consider affidavits and other materials beyond the pleadings to resolve the

jurisdictional issue," but must disregard "conclusory or hearsay statements" contained in them. *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Defendants lodge a fact-based challenge here.

In regard to South Fork Wind's motion, Rule 12(c) provides that "[a]fter the pleadings have closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Courts apply "[t]he same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010).

### III. DISCUSSION

Under Article III of the Constitution, federal courts can only hear disputes if the plaintiff has standing to sue. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, ⸺ U.S. ⸺, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Once again, Plaintiffs have the burden of establishing standing. "[A]t the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (internal quotation omitted). Here, Defendants argue that Plaintiffs have failed to establish any of them.

Plaintiffs' claimed injury is that they live on land affected by potential PFAS contamination and that "their property is less valuable because of the [trenching]." Compl. ¶ 38. They claim that these injuries are caused by Defendant's conduct because South Fork Wind "would not be planning to trench a cable" near their property "but for Defendants requiring South Fork Wind to use the Beach Lane route for the onshore cable as a condition of their approvals and permits." Compl. ¶ 39. Finally, Plaintiffs claim that their injuries are redressable by judicial relief because vacating or altering the Army Corps' building permit would prevent further contamination. The issue of causation is dispositive.

To show a "causal connection between the injury and the conduct complained of," a plaintiff must demonstrate that their injury is fairly traceable to the defendant's actions, "not the result [of] the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560-61.

Defendants argue that the location and manner of onshore trenching were dictated by local and state agencies like NYPSC, not Defendants. Defendants also maintain that they did not require trenching on Beach Lane as a condition of their permits, as alleged by Plaintiffs. In response, Plaintiffs stress that the permits granted by Defendants for offshore work were a necessary condition and a "but for" cause of construction on the Project as a whole, including onshore trenching for the Export Cable. They also insist that the Court must credit their allegations

8

that Defendants required the selection of Beach Lane as the route for the Export Cable.

Plaintiffs maintain that trenching on Beach Lane would not occur without Defendants' approval of the offshore Wind Farm. But "but for" causation is not alone sufficient to tether an injury to a defendant's conduct for the purposes of standing. *See Pettus v. Morgenthau*, 554 F.3d 293, 299 (2d Cir. 2009) (noting that in the standing context, "the concept of 'fairly traceable' in its ordinary form . . . requires more than mere 'but for' causation."). Of course, construction on the Project, including trenching, could not commence without permits being granted for the Wind Farm—otherwise, there would be no power for the Export Cable to carry ashore. But this bare "but for" relationship does not mean that Defendants' offshore permits "likely caused" trenching on Beach Lane and the PFAS contamination Plaintiffs allege. *TransUnion LLC*, 141 S. Ct. at 2203. Instead, Plaintiffs' injuries are directly traceable to NYPSC, which had exclusive jurisdiction over onshore trenching—precisely an "independent action of some third party not before the court." *Lujan*, 504 U.S. at 560.

Documents cited by both Defendants and Plaintiffs make clear that State and local entities approved Beach Lane as a path for the Export Cable, and that Defendants understood this choice to have already been made when issuing permits for the offshore Wind Farm. NYPSC in particular was responsible for

9

"determining the location of the onshore cable and considering alternative locations," and had done so before Defendants issued the FEIS in August 2021. NYPSC Mem., Dkt. No. 34-1, 4-5 (explaining that NYPSC enjoys "exclusive jurisdiction under state law to review the onshore portion of the [Export Cable]") (citing N.Y. Pub. Serv. Law §§ 120-130)).

The FEIS itself also reflects this decision timeline. In it, BOEM states that despite considering multiple potential landing sites for Export Cable, South Fork Wind had already been granted permits to trench on Beach Lane:

> Although [South Fork Wind] . . . proposes both these alternative landing sites, in the period since the draft EIS was published, [South Fork Wind] has secured approvals from the state and local agencies for the Beach Lane site and not the Hither Hills site. In part, because both routes are part of the envelope in the [construction and operations plan] and partly because the offshore cable routes are largely overlapping, this final EIS still considers the impacts associated with both routes.

FEIS at 2-5, n.4. East Hampton's easement agreement with South Fork Wind for onshore trenching on Beach Lane also was issued before Defendants' permits. Pl. Opp. Appendix, Dkt. No. 74-1, 6, 9, 25 (March 9, 2021 easement for trenching work "along Beach Lane to its intersection with Wainscott Main Street").

These facts directly contradict the Complaint's allegation that "Defendants requir[ed] South Fork Wind to use the Beach Lane route for the onshore cable as a condition of their approvals and permits." Compl. ¶ 39. Factual allegations are normally taken as true on a 12(b)(1) motion. *Dean*, 527 F. Supp. 3d at 394. But this

10

allegation's direct contradiction by material cited by both Defendants and Plaintiffs, which the Court finds to be true, means that Plaintiffs have failed to meet their burden of establishing subject matter jurisdiction. *Carter*, 822 F.3d at 57.

Defendants, meanwhile, had no jurisdiction over onshore trenching. BOEM's jurisdiction extends only over the portion of the Project situated on the outer continental shelf, which extends seaward from New York state waters. *See* 43 U.S.C. § 1337(p)(1) (granting Secretary of the Interior power, delegated to BOEM, to "grant a lease, easement, or right-of-way on the outer Continental Shelf"); 43 U.S.C. §§ 1331(a), 1301(a)(2) (defining "outer Continental Shelf" as "all submerged lands lying seaward and outside of" "a line three geographical miles distant from the coast line of each . . . State").

Nor did the Army Corps have jurisdiction over onshore trenching. Section 404 of the Clean Water Act grants the Army Corps authority to permit the discharge of dredged or fill material into disposal sites situated in "navigable waters," which include "waters of the United States, including the territorial seas." 33 U.S.C. §§ 1344(a), (d); 33 U.S.C. § 1362(7). Plaintiffs do not claim that the groundwater under Beach Lane constitutes waters of the United States. Instead, they point to a directive by the Army Corps ordering that work conform to permit drawings indicating the cable's onshore arrival on Beach Lane. P's App'x, Dkt.

No. 74-1, 76, 83. But the referenced December 3, 2021 permit drawing indicating a landing point on Beach Lane was created after NYPSC had already chosen Beach Lane as the trenching location. P's App'x, Dkt. No. 74-1, 83.

Plaintiffs also cite the Army Corps' Record of Decision, which defines the relevant "permit area" as including "those areas comprising [waters of the United States] that will be directly affected by the proposed work or structures, as well as activities outside of waters of the U.S. because all three tests identified in 33 C.F.R. 325, Appendix C(g)(1) have been met." P's App'x, Dkt. No. 74-1, 70. But 33 C.F.R. 325 does not expand the Army Corps' § 404 jurisdiction to onshore land, and this passage is explicitly labeled as pertaining only to the Army Corps' "[d]etermination of [a] permit area for Section 106 of the National Historic Preservation Act." *Id.* Plaintiffs rightly do not contend that the National Historic Preservation Act grants the Army Corps authority over onshore trenching outside its usual § 404 jurisdiction over waters of the United States. *See* 36 C.F.R. § 800.16(d) (defining the "[a]rea of potential effects" under NHPA as "the geographic area or areas within which an undertaking may directly or indirectly cause alterations in the character or use of historic properties").

Thus, Defendants' conduct is too attenuated from the location and manner of onshore trenching to be fairly traceable to Plaintiffs' alleged injuries. Because Plaintiffs fail to show that Defendants' conduct is the likely cause of their injuries,

they lack standing, and their Complaint must be dismissed. *TransUnion LLC*, 141 S. Ct. at 2203.

## IV. CONCLUSION

For the reasons explained above, Defendants' motion to dismiss is granted and the Complaint is dismissed with prejudice.

**SO ORDERED.**

     /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

July 17, 2023